**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 25-24067-CIV-WILLIAMS**

CONCH & COCONUT, LLC, *et al.*,

    Plaintiffs,

v.

CONCH & COCONUT LIMITED, *et al.*,

    Defendants.

_____/

## OMNIBUS ORDER

**THIS MATTER** is before the Court on the Motion for Reconsideration and Clarification ("***Motion for Reconsideration***") filed by Plaintiffs Conch & Coconut, LLC (the "***LLC***") and Pink Sand Spirits Co. (collectively, "***Plaintiffs***"). (DE 78). Defendants Conch & Coconut Limited ("***CCL***"), Julian Shaquille Gibson ("***Mr. Gibson***"), Letamae Johnson, Scott Silverman, J.S. Media Design, Jana Schrieber, The Corcoran Group LLC, and Corcoran CA Christie (collectively, "***Defendants***") filed a response in opposition (DE 87) and Plaintiffs filed a reply in support (DE 90). The Court also addresses the Motion to Dismiss ("***Motion to Dismiss***") (DE 65) filed by Defendants, to which Plaintiffs filed a response in opposition (DE 73) and Defendants filed a reply in support (DE 75). For the reasons that follow, Plaintiffs' Motion for Reconsideration (DE 78) is **DENIED**, and Defendants' Motion to Dismiss (DE 65) is **GRANTED IN PART AND DENIED IN PART**.

I.      **BACKGROUND**[1]

On September 8, 2025, Plaintiffs filed this civil action against Defendants, seeking damages and injunctive relief. (DE 1). Shortly after filing their Complaint, Plaintiffs filed a Motion for Preliminary Injunction (DE 11), asking this Court to enjoin Defendants from the purportedly unauthorized and unlawful use of their trademarks, trade secrets, and physical assets. After receiving briefing from both Parties, the Court held a preliminary injunction hearing on October 31, 2025. (DE 54). The Court permitted the Parties to continue the hearing and present their closing arguments on November 18, 2025. (DE 66). Subsequently, on December 22, 2025, the Court granted the Motion for Preliminary Injunction in part, enjoining Defendants from soliciting bookings from any consumer whose information was originated and maintained by Plaintiffs and from otherwise using any of the booking information originated and maintained by Plaintiffs for any business purpose (the "***December 22 Order***"; DE 76). In the Order, the Court found that Plaintiffs had failed to adequately maintain control over Defendants' use of their trademark, thereby granting them a "naked license," which extinguished Plaintiffs' ability to assert a trademark infringement claim. Plaintiffs then filed the Motion for Reconsideration, asking the Court to reconsider only its finding that they granted Defendants a naked license and seeking clarification that the findings are preliminary.

Separately, before the Court entered the December 22 Order, Defendants collectively moved to dismiss the instant litigation on various grounds. (DE 65).

---

[1] The Court thoroughly recounted the facts pertinent to this litigation in its December 22, 2025 Order and incorporates those facts herein.

1

## II.    LEGAL STANDARD

As this order addresses both the motion for reconsideration and the motion to dismiss, the corresponding legal standards are detailed below.

### A.  Motion for Reconsideration Standard

The applicable standard for reconsideration is the same whether moving under Rules 54(b), 59, or 60 of the Federal Rules of Civil Procedure. *Jones v. City of Palm Beach Gardens*, 2022 WL 16745733, at *2 (S.D. Fla. 2022); *Hall v. Sargeant*, 2019 WL 13067291, at *1 (S.D. Fla. 2019). A court may grant a motion for reconsideration only if the movant can affirmatively demonstrate: "(1) an intervening change in controlling law; (2) the availability of new evidence; [or] (3) the need to correct clear error or prevent manifest injustice*." Young Apartments, Inc. v. Town of Jupiter, Fla.*, 2007 WL 1490933, at *1 (S.D. Fla. 2007); *accord Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). "A motion for reconsideration is not appropriately used as a vehicle to 'relitigate old matters, raise arguments or present evidence that could have been raised prior to the entry of [the order].'" *Jones*, 2022 WL 16745733, at *2 (quoting *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005)). Moreover, "[m]otions for reconsideration are left to the sound discretion of the district court and are to be decided as justice requires." *Id.* (quoting *Belmont Holdings Corp. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210, 1223 (N.D. Ga. 2012)).

### B.  Motion to Dismiss Legal Standard

To survive a Federal Rule of Civil Procedure 12(b)(6) ("**Rule 12(b)(6)**") motion to dismiss, a complaint must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 570 (2007)). A court must accept factual allegations as true and draw reasonable inferences in the plaintiff's favor. *See Speaker v. U.S. Dept. of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). While a claim need not provide "detailed factual allegations," it must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id*. Although the court resolves all doubts or inferences in the plaintiff's favor, the plaintiff still bears the burden of framing the complaint with sufficient facts to demonstrate that he is entitled to relief. *Twombly*, 550 U.S. at 556.

Furthermore, under the doctrine of *forum non conveniens*, a court with venue may "decline to exercise its jurisdiction when the parties' and the court's own convenience, as well as the relevant public and private interests, indicate the action should be tried in a different forum." *Pierre–Louis v. Newvac Corp.,* 584 F.3d 1052, 1056 (11th Cir.2009). "The *forum non conveniens* determination is left to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). A defendant invoking *forum non conveniens* bears the burden in opposing the plaintiff's choice of forum. *Wilson v. Island Seas Invs., Ltd.,* 590 F.3d 1264, 1269 (11th Cir.2009) (citing *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007))

III.    **DISCUSSION**

   A.   The Motion for Reconsideration (DE 78) is denied.

As a threshold matter, the Court clarifies that an order granting a preliminary injunction—as the name suggests—is preliminary. Such orders are "generally *not* considered final or conclusive." *Eisenberg v. City of Miami Beach,* 54 F. Supp. 3d 1312, 1322 (S.D. Fla. 2014)

3

(quoting *David Vincent, Inc. v. Broward Cnty., Fla.,* 200 F.3d 1325, 1331 (11th Cir. 2000)). Accordingly, to the extent that either Party is characterizing the December 22 Order as a final adjudication on the merits, this Order should silence those representations.

Next, the Court considers Plaintiffs' argument that they did not grant Defendants a naked license and, even if they did, their trademark rights in the United States are unaffected. A naked license is granted "when the owner of a mark fails to supervise its licensee and allows the licensee to depart from the licensor's quality standards." *Groucho's Franchise Sys., LLC v. Grouchy's Deli, Inc.*, 683 F. App'x 826, 830 (11th Cir. 2017). When a mark owner grants a naked license, "it abandon[s] rights to a mark it owned." *Id.* In the Eleventh Circuit, this abandonment results in a total, unqualified loss of rights in the trademark. *See, e.g.*, *Blue Mountain Holdings Ltd. v. Bliss Nutraceticals, LLC*, No. 20-CV-1837, 2022 WL 4130752, at *5 (N.D. Ga. Sept. 12, 2022) (holding that the trademark owner "forfeited all rights in the [trademark] by granting a naked license")*, aff'd,* No. 22-CV-13441, 2023 WL 5164472 (11th Cir. Aug. 11, 2023) (affirming the district court and explaining that the licensor "abandoned quality control, and thus abandoned its trademark *altogether*.") (emphasis added); *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd*., 140 F.4th 1304, 1324 (11th Cir. 2025) (noting that "a trademark owner . . . has a duty to supervise third-party use of its trademark, or risk having its mark cancelled."); *CNA Fin. Corp. v. Brown*, 922 F. Supp. 567, 574 (M.D. Fla. 1996) ("Indeed, when a service mark owner engages in naked licensing . . . such a practice is inherently deceptive and constitutes abandonment of *any* rights to the service mark by the licensor.") (emphasis added).

Plaintiffs' Motion for Reconsideration refrains from asserting that they had any supervision or control over Defendants' use of their marks. Instead, Plaintiffs aver that "the LLC *maintained awareness* of the quality of the services being offered, and the LLC maintained control of the use of the C&C Marks in the United States." (DE 78 at 2) (emphasis added). Mere awareness, however, is not synonymous with actual supervision or control, and Plaintiffs' own language suggests that they are aware of that distinction. In the instant case, Defendants' services

4

purportedly suffered from significant quality issues: Mr. Gibson failed to properly maintain business relationships and allegedly assaulted tourists while purportedly operating as Plaintiffs' licensee. (DE 1 ¶ 42). Plaintiffs claim that "the LLC disciplined Gibson for these events, though given the relationship at the time, the discipline took the form similar to a parent disciplining a wayward child rather than formal corporate disciplinary proceedings." (DE 78 at 6). This approach consisted of Mr. Pablo Conde providing Mr. Gibson with "mentoring" and "guidance." (*Id.*). It is unclear to this Court, however, how that "mentoring" and "guidance" amounts to sufficient quality control over the services provided under Plaintiffs' marks. Sufficient quality control requires "*actual control.*" *Blue Mountain Holdings Ltd.*, 2022 WL 2316386, at *5 (emphasis in original); *see also Gen. Motors Corp. v. Gibson Chem. & Oil Corp.*, 786 F.2d 105, 110 (2d Cir. 1986) ("The critical question in determining whether a licensing program is controlled sufficiently by the licensor to protect his mark is *whether the licensees' operations are policed adequately to guarantee the quality of the products sold under the mark*.") (emphasis added). A licensor must "supervise a licensee's use of its own mark and to some extent a licensee's operations under that mark[.]" *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1519 (11th Cir. 1992).

Plaintiffs do not, however, argue that they had even limited control over Defendants' operations under their marks.[2] Instead, Plaintiffs concede that "[CCL] was, from its inception, an *independent company* operated solely by Gibson, *free from any interference* from [LLC]." (DE 1 ¶ 43) (emphasis added).

---

[2] Plaintiffs point to the fact that the Court previously recognized that Defendants' operations were autonomous. (DE 78 at 6). They argue that the autonomous operations do not support a finding that the LLC failed "to police the use of the mark or the quality of the services rendered by Defendants under the mark." (*Id.*). As explained *supra*, Plaintiffs' position is inapposite with the relevant jurisprudence on this issue. If Defendants were free to operate as they saw fit—and thereby provide an inferior quality of services under Plaintiffs' marks—then Plaintiffs did not provide sufficient supervision.

Furthermore, the autonomous nature of CCL's operations was reinforced by the Consulting and Lease with Option to Buy Agreement ("***C&L Agreement***") entered into by the Parties, which purported to license Plaintiffs' marks to CCL, but expressly stated that CCL would function as an independent business. (C&L Agreement at 2). The C&L Agreement does not contain any provisions that would allow the LLC to supervise CCL's services under the LLC's marks or otherwise set benchmarks for quality.

Plaintiffs equate their control over the booking website, social media accounts, and review platforms with control over the quality of services provided by Defendants. (DE 78 at 6). According to Plaintiffs, they "controlled Defendants' quality of services by controlling the flow of business to Defendants, such that if Defendants did not provide services consistent with the LLC's quality standards, the LLC *could* stop the flow of business to Defendants and find other partners in the Bahamas with which to work." (*Id.* at 6-7) (emphasis added). Yet, Plaintiffs testified during the November 18, 2025 Hearing that "[e]very time Mr. Gibson screwed up, [by] . . . fail[ing] to maintain the golf carts, fail[ing] to maintain the boats, Mr. Conde was there to clean up the mess and let Mr. Gibson know that he needed to do better . . .[a]nd when Mr. Gibson got into a fight with tourists, Mr. Conde smoothed that over so that . . . there were no lasting repercussions[.]" (DE 122 at 61). It seems apparent, then, that despite their argument that they *could* purportedly control the quality of Defendants' services, Plaintiffs never actually exercised such consistent, continuous control. Instead, beyond providing "mentoring" and "guidance" and cleaning up messes, Plaintiffs did not exert any control over Defendants' operations, and the record establishes that Defendants continued to "screw up." Absent actual control, any purported admonition that Plaintiffs could have delivered is insufficient and Defendants' continued mishaps indicate unaddressed issues with the quality of services provided under Plaintiffs' marks. 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:48 (5th ed.). (explaining that "[t]he key to compliance with the quality control requirement for trademark licensing is actual control: the presence or lack of a contractual right to control is secondary."). Accordingly, the December 22 Order correctly found that Plaintiffs have not established that they exercised sufficient control over the quality of services provided by Defendants. Plaintiffs' Motion for Reconsideration, therefore, is denied.

B.  <u>The Motion to Dismiss (DE 65) is granted in part.</u>

In their Motion to Dismiss, Defendants collectively advance several arguments as to why this litigation should not proceed: the Court should decline to exercise jurisdiction under the doctrine of *forum non conveniens*; the Court cannot exercise personal jurisdiction over

Defendants Johnson and CA Christie; and Plaintiffs failed to state valid causes of action against the so-called "Ancillary Defendants."[3] The Court considers these arguments below.

1. *Forum non conveniens.*

Defendants argue that the Court should dismiss the instant litigation because "The Bahamas is an adequate, available, and more appropriate forum for this dispute." (DE 65 at 11). Defendants point to the fact that Plaintiffs initiated proceedings in The Bahamas that overlap with the underlying facts of the instant matter. (*Id.* at 10). They also highlight that "a number of witnesses" and "physical evidence" are located in The Bahamas. (*Id.* at 11). Plaintiffs counter that The Bahamas is not an adequate alternative forum because this case involves the adjudication of U.S. trademark rights over which the Bahamian courts have no jurisdiction. (DE 73 at 6). The Court agrees with those assertions.

Generally, in the *forum non conveniens* context, the "plaintiff's forum choice should rarely be disturbed." *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1338 (11th Cir. 2020) (internal quotation marks and citation omitted). In those rare instances where a *forum non conveniens* dismissal is appropriate, three conditions must exist: (1) there is an adequate and available alternative forum for plaintiff's claims; (2) the balance of the private and public interests weigh in favor of dismissal; and (3) the plaintiff must be able to reinstate their suit in the alternative forum without inconvenience. *Id.* The defendant seeking a *forum non conveniens* dismissal must establish all of the above conditions. *Id.* Moreover, the "presumption in favor of plaintiffs' initial forum is strongest when the plaintiff is a United States citizen, resident, or corporation[.]" *J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co.*, 515 F. Supp. 2d 1258, 1273 (M.D. Fla. 2007). While such a presumption does not automatically bar a *forum non conveniens* dismissal, the defendant seeking the dismissal carries a heavier burden than cases with foreign plaintiffs. *See Piper*

---

[3] The Motion to Dismiss refers to Defendants Letamae DeCosta Johnson ("**Johnson**"), Scott Silverman ("**Silverman**"), Jana Schreiber ("**Schreiber**"), J.S. Media Design, Inc. ("**J.S. Media**"), Corcoran CA Christie ("**CA Christie**"), and Corcoran Group LLC ("**Corcoran Group**") as the "Ancillary Defendants." The Court adopts these references.

*Aircraft,* 454 U.S. at 256 (explaining that "[c]itizens or residents deserve somewhat more deference than foreign plaintiffs" in a *forum non conveniens* inquiry).

In their Reply, Defendants highlight several cases where courts granted dismissal pursuant to the doctrine of *forum non conveniens*. (DE 75 at 5). Those cases, however, involved foreign plaintiffs suing foreign companies and are inapposite to the facts before the Court. For example, in *Sysco Machinery Corporation v. Cymtek Solutions, Inc.*, a Taiwanese company sued other Taiwanese companies for alleged infringement. 124 F.4th 32, 35 (1st Cir. 2024). Similarly, in *Creative Tech., Ltd. v. Aztech Systems Pte., Ltd.*, a copyright infringement case was litigated between two competing foreign corporations. 61 F.3d 696, 698 (9th Cir. 1995). Neither case involved the same level of deference afforded to domestic plaintiffs that Plaintiffs in this case are entitled to.

Moreover, while Defendants claim the Bahamian courts are well-suited to redress Plaintiffs' injuries because of the overlapping nature of the underlying facts between this litigation and the parallel proceedings in The Bahamas, they do not explain *how* that remedy would impact the focus of this litigation: Plaintiffs' rights under United States trademark law. An adequate alternative forum, of course, does not need to be a "perfect forum, but it must provide satisfactory remedy." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2009). An alternative forum may still be adequate even if the "the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum." *Piper Aircraft*, 454 U.S. at 247. Still, the alternate forum must be able to offer some relief that addresses the plaintiffs' claims. The Bahamian courts do not have the ability to grant such relief because the decisions of those courts would not have any authority over the Plaintiffs' rights in the United States. *See E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1531 (11th Cir. 1985); *see also Biver v. Nicholas Fin., Inc.,* No. 14-CV-250, 2014 WL 2441891, at *6 (M.D. Fla. 2014) (finding that a foreign court was not an adequate alternative forum because the Plaintiffs' claims involved the interpretation of United States laws and because the United States has a strong interest in

ensuring that its citizens are "able to pursue their claims in the United States"). The Bahamas, therefore, cannot provide Plaintiffs an adequate alternate forum for this dispute. Accordingly, the Court declines to dismiss this case pursuant to the doctrine of *forum non conveniens.*

### 2.  *Corcoran Group*

Plaintiffs contend that Defendant Corcoran Group is the parent company or affiliate of Defendant CA Christie. (DE 1 at 3). Generally, "[a] parent [company] . . . is not responsible for the acts of its subsidiaries." *PNC Bank, Nat'l Ass'n v. Fresh Diet, Inc.*, No. 17-CV-21027, 2018 WL 3412871, at *3 (S.D. Fla. Mar. 22, 2018) (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). Vicarious liability, however, may nonetheless be established for a parent corporation if plaintiffs allege that there is a "substantial and continuing connection between infringing acts of the parent and subsidiary." *Pegasus Imaging Corp. v. Northrop Grumman Corp.*, No. 07-CV-1937, 2009 WL 10669186, at *2 (M.D. Fla. 2009) (internal quotation marks omitted) (citing *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1518 (11th Cir. 1990)). Specifically, the parent corporation must be "actually involved with the decisions, processes, or personnel directly responsible for the infringing activity." *Banff Ltd. v. Ltd., Inc.*, 869 F. Supp. 1103, 1109 (S.D.N.Y. 1994).

In their Complaint, Plaintiffs allege that Mr. Gibson infringed their marks "in furtherance of his job at [CA Christie], and to the benefit of Corcoran Group." (DE 1 at 23). Plaintiffs claim that Mr. Gibson "displays and uses" their marks "with permission and license from [CA Christie] and Corcoran Group." (*Id.*). They further state that Mr. Gibson "holds himself out publicly as an agent and employee of [CA Christie] and as an agent of Corcoran Group[.]" (*Id.*). Plaintiffs explain that "Corcoran Group owns the CORCORAN® marks . . . and exercises control over the way [CA Christie] and its agents, including [Mr.] Gibson, offer real estate services under the CORCORAN® marks." (*Id.* at 24).

These conclusory statements, however, are insufficient to establish the Corcoran Group's participation in the alleged infringement or even its relationship to CA Christie. Specifically,

9

Plaintiffs fail to sufficiently allege that the Corcoran Group was involved in any of the decisions or processes related to Mr. Gibson's purported infringement or that Corcoran Group even has any influence over Mr. Gibson's employment. Mere statements that the Corcoran Group "exercises control," without any allegations as to how that control is manifested in the relationship[4] between the corporate entities, is not enough for a finding of vicarious liability. *See e.g., Banff Ltd.* 869 F. Supp. 1103; *Muminov v. Muniraj Enters., Inc.*, No. 11-CV-969, 2012 WL 760638, at *2 (M.D. Fla. 2012) ("Mere use of a franchisor's trademark is insufficient to establish vicarious liability . . . some 'indicia of greater control' is needed."); *Walker v. Super 8 Worldwide, Inc.*, 2012 WL 13102078, at *3 (M.D. Fla. 2012) (explaining that even where an apparent franchise relationship existed, "more—namely substantial control—is required to establish vicarious liability[.]"); *ITT Corp. v. Xylem Grp., LLC*, 963 F. Supp. 2d 1309, 1324 (N.D. Ga. 2013) (finding liability where the parent company actively participated in the infringement by ignoring counsel's advice and endorsing the use of an infringing mark). Accordingly, the Corcoran Group is dismissed from this action.

3. *CA Christie*

According to Plaintiffs, CA Christie "employs [Mr.] Gibson as a real estate agent to rent and sell properties in [T]he Bahamas," (DE 1 at 3), and Mr. Gibson's office displays Plaintiffs' marks alongside a sign bearing CA Christie's logo. (*Id.* at 20). Plaintiffs aver that Mr. Gibson "infringed [their] marks and counterfeited [their] services in furtherance of his job at [CA Christie], and to the benefit of [CA Christie]." (*Id.* at 23). Mr. Gibson "holds himself out publicly as an agent and employee of [CA Christie]" and is listed on their website as an estate agent. (*Id.*). On those

---

[4] Plaintiffs are uncertain as to whether CA Christie is "a subsidiary, affiliate, licensee or franchisee" of the Corcoran Group. (DE 1 at 24). At some points, the Complaint refers to the Corcoran Group as a "franchisor." (DE 1 at 30). In other instances, Plaintiffs submit that CA Christie "is the subsidiary or affiliate of Corcoran Group." (*Id.* at 3). Thus, it is unclear to this Court whether Plaintiffs are speculating as to the relationship between the corporations or are simply claiming that all of those terms apply. In any event, there is a distinction—for example—between a "subsidiary" and a "licensee" or "franchisee." *See generally* Black's Law Dictionary (12th ed. 2024).

grounds, Plaintiffs argue that CA Christie "is vicariously liable for the tortious and unlawful actions . . . of its agent and/or employee, [Mr.] Gibson." (*Id.*).

Mr. Gibson's purported trademark infringement and misappropriation of trade secrets qualify as tortious acts. *See, e.g.*, *La Potencia, LLC v. Chandler*, No. 22-CV-80417, 2023 WL 1430480, at *6 (S.D. Fla. 2023) (explaining that trademark infringement is an intentional tort); *Dive N' Surf, Inc. v. Anselowitz*, 834 F. Supp. 379, 382 (M.D. Fla. 1993) ("Trademark infringement is a tort[.]"); *Alabama Aircraft Indus., Inc. v. Boeing Co.*, No. 20-CV-11141, 2022 WL 433457, at *8 (11th Cir. 2022) ("There is no dispute that misappropriation of trade secrets is a tort claim."). Generally, however, an employer "is not liable for a tort committed by its employee." *Lozada v. Hobby Lobby Stores, Inc.*, 702 F. App'x 904, 909 (11th Cir. 2017). Liability attaches only if the employer "authorized the tort or if the employee committed the tort while acting within the real or apparent scope of his employment." *Id.*

Again, as they did with the Corcoran Group, Plaintiffs offer conclusory statements in an attempt to establish vicarious liability for CA Christie. Plaintiffs aver that Mr. Gibson's infringement was done "in furtherance of his job at [CA Christie]," (DE 1 at 23), using their marks "to rent, sell or offer to sell or rent real estate properties in the Bahamas to consumers in the United States and Florida." Plaintiffs do not, however, explain *how* Mr. Gibson used the marks for those purposes and whether that purported use falls within the scope of Mr. Gibson's duties as CA Christie's real estate agent.[5] Nor do they allege that CA Christie authorized, participated in, or even had the ability to control Mr. Gibson's tortious activities. Plaintiffs seem to argue that CA Christie should be vicariously responsible for Mr. Gibson's tortious actions simply because he is its employee or agent and it was, in some unidentified way, unjustly enriched because of his actions. (*Id.* at 23).

---

[5] Similarly, as discussed *supra*, Plaintiffs highlight the fact that the signs outside of Mr. Gibson's office bear their marks and are hung alongside CA Christie's sign. (*Id.* at 20). Still, they do not allege how these office signs facilitate sales, appointments, or activities that fall within the scope of Mr. Gibson's work with CA Christie.

Again, such conclusory statements are generally insufficient for a finding of vicarious liability. *See, e.g.*, *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 806 (9th Cir. 2007) ("Because [plaintiff] has failed to show that Defendants have the right and ability to control the alleged infringing conduct, it has not pled a viable claim of vicarious liability."); *Garnett v. Remedi Seniorcare of Virginia, LLC*, 892 F.3d 140, 146 (4th Cir. 2018) (explaining that "the conclusory language in the complaint does not . . . establish vicarious liability" when there were no allegations that the employer "ever direct[ed] or encourage[d] or condone[d] the alleged offense."). Well-plead allegations are required irrespective of whether a plaintiff is trying to establish vicarious liability under a theory of actual agency or apparent agency.[6] *See Ridley v. NCL (Bahamas) Ltd.*, 824 F. Supp. 2d 1355, 1362 (S.D. Fla. 2010) (declining to find vicarious liability when the complaint merely stated that defendants were "apparent agents . . . [with] authority to act for [the employer's] benefit."); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013) (explaining that "a principal is subject to liability for its agent's tortious conduct only if the conduct is within the

---

[6] Notably, Plaintiffs do not expressly advance either theory in their Complaint and, instead, submit conclusory statements that allude to agency. *See* DE 1 at 23. They point the Court towards CA Christie's website, which lists Mr. Gibson as a "real estate agent." (*Id.*). Still, this is not enough to establish vicarious liability. For example, if Plaintiffs hoped to establish vicarious liability under a theory of apparent agency, they would have had to allege facts sufficient to show that *they themselves* detrimentally relied on that apparent agency. *See Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 797 (11th Cir. 2017) ("To succeed on a claim of apparent agency, a plaintiff must establish first, a representation by the principal to the plaintiff, which, second, causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit, and which, third, **induces the plaintiff's detrimental, justifiable reliance upon the appearance of agency**.") (internal quotation marks and citation omitted) (emphasis added). The Complaint, however, contains no such allegations.

On the other hand, to establish vicarious liability under actual agency, Plaintiffs needed to allege that CA Christie had some ability to control Mr. Gibson's conduct and that he was acting within the scope of his employment. *See, e.g.*, *Btesh v. City of Maitland, Fla.*, No. 6:10-CV-71, 2010 WL 2639562, at *4 (M.D. Fla. 2010) ("The elements of actual agency are: (1) acknowledgment by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent."); *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1121 (S.D. Fla. 2021) (explaining that "the general rule when an agency relationship exists is this: "a principal may be held vicariously liable for the acts of his or her agent committed within the scope of the agent's real authority."); *West v. DJ Mortg., LLC*, 271 F. Supp. 3d 1336, 1355 (N.D. Ga. 2017) (explaining that "traditional rules would make a principal liable for the acts of its agent that are committed in the scope of the agent's authority."). Putting aside the conclusory statements, the Complaint does not offer specific allegations sufficient to establish either the scope of Mr. Gibson's engagement with CA Christie or CA Christie's ability to control his conduct.

scope of the agent's actual authority or ratified by the principal."); *United States ex rel. Miniex v. Houston Hous. Auth.*, No. 21-20435, 2023 WL 6174416, at *5 (5th Cir. 2023) (declining to find vicarious liability when plaintiff failed to allege the scope of the agent's authority). In any event, causes of action that are grounded on conclusory statements or recitations of the elements underlying a cause of action cannot survive a Rule 12(b)(6) challenge. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, because Plaintiffs offer conclusory statements and fail to allege facts[7] sufficient to establish vicarious liability, CA Christie is dismissed from this action.

### 4. Letamae DeCosta Johnson

Ms. Letamae Johnson was hired by Mr. Gibson, "at [the Plaintiff LLC's] insistence, to provide accounting, management information, and she was given access to [the LLC's] platforms to facilitate [the] same, including ensuring that the Bahamian VAT taxes, licensing and registrations were properly handled." (DE 1 at 10). Plaintiffs claim that Ms. Johnson, acting at "CCL, [Mr.] Gibson, or Silverman's direction, began to edit [the LLC's] existing bookings[,] canceling them or lowering the total pricing for the booking[s] to match the deposit amount, in order to close out the booking[s]." (*Id.* at 16). Plaintiffs further allege that Ms. Johnson, "or someone using her account[,] downloaded all of [the LLC's] booking data from fareharbor.com, through the end of 2025. (*Id.*). In short, Plaintiffs claim that Ms. Johnson facilitated Defendants' misappropriation of their trade secrets and interfered with their bookings. Accordingly, Plaintiffs argue that Ms. Johnson is liable for tortious interference with contractual relationships (Counts II and X), registered trademark infringement (Count V), false designation of origin of marks (Count VI and IX), common law trademark infringement (Count VII), theft of trade secrets (Count VIII), unfair competition (Count XI), and unjust enrichment (Count XII).

---

[7] Plaintiffs submitted additional facts in their Response in Opposition to Defendants' Motion to Dismiss. At the motion to dismiss stage, however, "the court may only look at the four corners of the complaint and the documents attached to the complaint." *State Farm Mut. Auto. Ins. Co. v. Advanced Chiropractic & Med. Ctr. Corp.*, No. 18-21127, 2019 WL 2534908, at *5 (S.D. Fla. 2019) (citing *Speaker v. U.S. Dep't. of Health and Human Servs. Ctr. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010)).

Defendants argue that all of these counts should be dismissed for lack of personal jurisdiction under Rule 12(b)(2). (DE 65 at 8). Specifically, Defendants argue that Ms. Johnson lacks sufficient contacts with Florida because she is a Bahamian national and all of her purported misconduct occurred in The Bahamas. (*Id.* at 15). This argument, by itself, is unavailing. It is "well-established that a website's accessibility in Florida is sufficient to establish personal jurisdiction under the Florida long-arm statute." *Gazelles FL, Inc. v. Cupp*, No. 18-CV-544, 2018 WL 7364591, at *7 (M.D. Fla. 2018); *see also Organic Mattresses, Inc. v. Enviornmental Res. Outlet, Inc.*, No. 17-CV-21905, 2017 WL 5665354, at *11 (S.D. Fla. Oct. 6, 2017), *report and recommendation adopted sub nom. Organic Mattresses, Inc. v. Env't Res. Outlet, Inc.,* No. 17-21905, 2017 WL 5665356 (S.D. Fla. Oct. 24, 2017) (explaining that "where a defendant creates a website and where a defendant posts infringing material does not necessarily control because the most important issue is whether it causes an injury in Florida"). Here, Plaintiffs specifically alleged that Ms. Johnson accessed their website and edited their bookings. (DE 1 at 16). This allegation is sufficient to establish this Court's jurisdiction because LLC, as a Florida limited liability company with its principal place of business in Florida, allegedly suffered injuries because of Ms. Johnson's conduct.

Defendants, however, are correct that several of Plaintiffs' other allegations against Ms. Johnson are impermissible group pleadings. (DE 65 at 17). Plaintiffs repeatedly utilize an "and/or" phrasing throughout their Complaint. *See generally* DE 1. For example, Plaintiffs aver that "CCL *and/or* [Mr.] Gibson and [Ms.] Johnson further launched the infringing [] Website[.]" (DE 1 at 18) (emphasis added). Such an allegation, however, is insufficient because it does not specify which of the Defendants are actually responsible for the purported misconduct. *See, e.g.*, *KPOKYC v. President*, 858 F. App'x 289, 291 (11th Cir. 2021) (Plaintiff's "complaint constituted a shotgun pleading" because it was filled with conclusory statements and the "complaint failed to specify which defendant is responsible for what actions."); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (finding allegations insufficient when the complaint made no distinction between

14

which defendants committed the misconduct); *Fuller v. Broward Cnty. Mass Transit (Off. of Transp.)*, No. 08-CV-61016, 2009 WL 112851, at *6 (S.D. Fla. Jan. 16, 2009) (explaining that "Plaintiff must make clear which defendant is responsible for each factual allegation"). The above allegation is unclear as to whether CCL alone launched the infringing website, or if it was Mr. Gibson, Ms. Johnson, or a combination of all three parties. Plaintiffs' Complaint is replete with such ambiguous statements. However, as discussed *supra*, Plaintiffs specifically allege that Ms. Johnson inappropriately modified their bookings and caused an injury that affects their business, as a Florida company, with customers that include Florida residents. Ultimately, this is sufficient to establish personal jurisdiction over Ms. Johnson and, at this early stage, the Court will not dismiss her from this litigation. For the reasons discussed *infra*, however, the Court will dismiss Count X and XII against Ms. Johnson.

### 5. Scott Silverman

Mr. Scott Silverman is a Florida resident who, according to Plaintiffs, counseled the other Defendants into the misconduct at issue in this litigation. (DE 1 at 16) Plaintiffs further claim that Mr. Silverman personally facilitated the misappropriation of their marks and trade secrets by, for example, reaching out to distributors and falsely claiming that Plaintiffs did not own their marks. (*Id.* at 17). Some of the allegations against Mr. Silverman, however, suffer from the pleading deficiency discussed *supra*.[8] Nonetheless, the Court considers the specific allegations that Plaintiffs do advance, and the counts brought against Mr. Silverman.

As a threshold matter, there is no question as to the Court's jurisdiction over Mr. Silverman, since he is a Florida resident, and Defendants do not contest jurisdiction. Instead, Defendants argue that Plaintiffs' allegations are insufficient to satisfy the elements of their various counts. The Court considers each in turn.

---

[8] The example cited in Ms. Johnson's section is illustrative: from the allegations, it is unclear whether Ms. Johnson downloaded the booking data at Mr. Silverman's direction or pursuant to instructions provided to her by other Defendants.

      i.   Tortious Interference With Pink Sand Spirits' Contractual Relationships (Count X)

Plaintiffs allege that "[Mr.] Silverman, [Mr.] Gibson, and/or Ms. Johnson reached out to [Pink Sands' distributor] in an effort to offer them knock-off and/or counterfeit infringing goods and to represent themselves as the 'real' source of such goods." (DE 1 at 17). Plaintiffs further allege that Mr. Silverman "contacted Pink Sand Spirits' distributor . . . claiming to represent an owner of Pink Sands in the Bahamas . . . [and] threatened [the distributor] with litigation." (*Id.*). Accordingly, Plaintiffs brought a count of tortious interference with Pink Sand Spirits' Contractual Relationships (Count X) against Mr. Silverman, Mr. Gibson, and Ms. Johnson.

Defendants, however, argue that the Complaint fails to "identify any contracts . . . that Silverman allegedly interfered with . . . [and] fails to allege that any distributor actually breached its contract with [Pink Sands]." (DE 65 at 22). Defendants argue that "[w]ithout an actual breach, there can be no tortious interference claim." (*Id.*). In their response, Plaintiffs argue that "[t]he Complaint identifies the business relationship [that was allegedly interfered with] and sets forth the scope of the interference." (DE 73 at 21). Plaintiffs highlight that the Complaint alleges that their business relationship with their distributor suffered as a result of Defendants' alleged conduct and they argue that such an allegation is sufficient to support their tortious interference claim. (*Id.*). In support of this proposition, Plaintiffs cite *Tucci Worldwide, LLC v. S. Frankford & Sons, Inc.*, No. 23-CV-20615, 2023 WL 5275187, at *6 (S.D. Fla. Aug. 16, 2023). *Tucci*, however, was a case involving tortious interference *with business relationships*, not with contractual relations. While the two causes of actions have similar aspects, they are in fact "separate causes of action with different elements." *City Commc'ns, Inc. v. DailyTel, Inc.*, No. 22-CV-81813, 2024 WL 3105929, at *11 (S.D. Fla. 2024), *report and recommendation adopted*, No. 9:22-CV-81813, 2024 WL 3103365 (S.D. Fla. 2024); *see also Arthrex, Inc. v. Hilton,* No. 21-CV-850, 2022 WL 685496, at *12 (M.D. Fla. 2022) (explaining that "tortious interference with business relations is a separate and discrete cause of action from tortious interference with contractual relations."). The material

difference between the two causes of action is that one is premised on the existence of a contract and the other is predicated on business relationships. To establish a claim for tortious interference with contractual relations, a plaintiff must allege that: "(1) a contract exists, (2) a third party has knowledge of the contract, (3) the third party intentionally interferes with a party's rights under the contract, (4) there is no justification or privilege for the interference, and (5) there are damages." *City Commc'ns, Inc.*, 2024 WL 3105929, at *11 (internal quotation marks and citation omitted). By contrast, a tortious interference with an advantageous business relationship claim requires allegations that there was "(1) the existence of a business relationship; (2) that the defendant knew of the relationship; (3) the defendant intentionally and unjustifiably interfered with the relationship; and (4) damage to the plaintiff as a result of the breach of the relationship." *Id.* (internal quotation marks and citation omitted). Plaintiffs appear to conflate the two causes of action: their Complaint expressly lists a count of tortious interference with "contractual relationships," (DE 1 at 39), but their response in opposition focuses on the elements of a tortious interference with business relations claim and cites to a case focused on that particular cause of action. (DE 73 at 21). Accordingly, Count X is a shotgun pleading because it merges two distinct causes of action into one count. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). ("The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief."). Therefore, Count X is dismissed against not just Mr. Silverman but also against Mr. Gibson and Ms. Johnson. Plaintiffs may, however, file an amended complaint within fourteen (14) days of this Order to cure the deficiency discussed above.

### ii.      Unjust Enrichment (Count XII)

A plaintiff bringing an unjust enrichment claim must allege three elements: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff."

*Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009) (citations omitted). Defendants claim that the unjust enrichment claim against Mr. Silverman must be dismissed because "Plaintiffs have not alleged any specific facts showing receipt and retention of a benefit at Plaintiffs' expense." (DE 65 at 22). The Court agrees.

Plaintiffs aver that they "conferred value and benefits upon Defendants through the operation of [Plaintiffs' businesses], including provision of assets, goodwill, and customer relationships." (DE 1 at 41). Defendants, in turn, wrongfully retained these assets and customer information and unjustly enriched themselves. (*Id.*). While Plaintiffs sufficiently allege that CCL and Mr. Gibson may have been unjustly enriched through Plaintiffs' investments in physical assets and access to their customer information, the Complaint is devoid of any benefits conferred upon Mr. Silverman, Ms. Johnson, Ms. Schrieber, or J.S. Media Design. A general assertion that "Defendants" received and retained a benefit is insufficient to establish liability. *See Bruggemann v. Amacore Grp., Inc.*, No. 8:09-CV-2562, 2010 WL 2696230, at *5 (M.D. Fla. July 6, 2010) (dismissing unjust enrichment claim where the claim "lumps all of the Defendants together" and "does not identify how the elements of unjust enrichment apply to [individual defendants]"). Accordingly, the unjust enrichment claim is dismissed as to Mr. Silverman, Ms. Johnson, Ms. Schrieber, and J.S. Media Design. Again, Plaintiffs may cure this deficiency by filing an amended complaint within fourteen (14) days of this Order.

### 6.   Jana Schrieber and J.S. Media Design, Inc.

Since Defendant Jana Schreiber is a Florida resident and Defendant J.S. Media Design, Inc. is a Florida corporation, (DE 1 at 3), (*Id.*) there is no question as to the Court's jurisdiction over these defendants.

In their Complaint, Plaintiffs allege that "CCL and/or Gibson hired [Ms.] Schrieber and her company, [J.S. Media], to build and maintain the CCB Website." (DE 1 at 22). They further allege that "[J.S. Media] and/or [Ms.] Schrieber had and have actual control over the CCB Website and are thus controlling and directing CCL's infringement." (*Id.* at 22). Plaintiffs claim that Ms.

18

Schreiber "copied pictures from the C&C website in preparing the CCB Website, including one of the Conde family, without permission." (*Id.*). According to Plaintiffs, this is sufficient to establish liability under the Defend Trade Secrets Act ("**DTSA**") (Count VIII) against Ms. Schreiber and J.S. Media because they "knowingly aided and abetted [the other Defendants'] trade secret misappropriation[.]" (DE 1 at 35). Aiding and abetting liability, however, is not available as a cause of action under the DTSA. *See, e.g.*, *Zebra Strategies, Inc. v. Gonzalez-Nazario*, 764 F. Supp. 3d 144, 158 (S.D.N.Y. 2025) ("In other words, there is no private cause of action under the DTSA for aiding and abetting misappropriation of trade secrets."); *Power Home Solar, LLC v. Sigora Solar, LLC*, 2021 WL 3856459, at *10 (W.D. Va. Aug. 30, 2021) ("aiding and abetting the theft of trade secrets is not a cognizable right of action under the DTSA"). Instead, to bring a cause of action under the DTSA, a "plaintiff must show that each defendant individually misappropriated at least one trade secret." *Hedgeye Risk Mgmt., LLC v. Dale*, No. 21-CV-3687, 2023 WL 6386845, at *7 (S.D.N.Y. Sept. 29, 2023). Here, Plaintiffs have not alleged that either Ms. Schreiber or J.S. Media misappropriated any trade secret—only that they aided and abetted the misappropriation of other Defendants.[9] Accordingly, Count VIII as to Ms. Schrieber and J.S. Media is dismissed.

## IV.   CONCLUSION

For the reasons set forth above, it is **ORDERED AND ADJUDGED** as follows:

1.   Plaintiffs' Motion for Reconsideration (DE 78) is **DENIED**.

2.   Defendants' Motion to Dismiss (DE 65) is **GRANTED IN PART**. The Parties and Counts dismissed above are **DISMISSED WITHOUT PREJUDICE**. Any Party or Count not expressly dismissed in this Order remains as part of this litigation. Within

---

[9] The allegations against the other Defendants are sufficient to establish that they may have misappropriated trade secrets. Ms. Johnson, for example, allegedly logged into Plaintiffs' platform to download customer information originated by Plaintiffs. Such allegations are not advanced against Ms. Schreiber or J.S. Media. Instead, Plaintiffs apparently want to create liability for these defendants because they maintain the website that houses the infringing material. As discussed *supra*, however, there is no aiding and abetting liability under the DTSA.

fourteen (14) days of this order, Plaintiffs may file an amended complaint to address only the specific pleading deficiencies identified above.

**DONE AND ORDERED** in Chambers in Miami, Florida, on this <u>10th</u> day of July, 2026.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

20